IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHERMAN PETTY,
    Plaintiff,

v.

THE COUNTY OF FRANKLIN,
OHIO, et al.,
    Defendants.

Case No. 2:04-CV-245
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court for consideration of the Motion to Dismiss on behalf of Defendants Franklin County, the Franklin County Sheriff's Office, and Defendants John Doe #1 and John Doe #2, as well as the Motion for Summary Judgment on behalf of Franklin County Sheriff James Karnes. (Doc. #24). For the reasons that follow, the motion is granted.

### I.

Plaintiff, Sherman Petty ["Plaintiff"], brings this action claiming violation of his rights under the Eighth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983. The Defendants in this action are Franklin County, Ohio, the Franklin County Sheriff's Office, Sheriff James Karnes, and John Does # 1-4[1]. Plaintiff also alleges state law claims of negligence and assault and battery. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331

---

[1] Plaintiff claims that John Does #1 and #2 are Sheriff's Department employees. They have not been identified or served with process. John Does #3 and #4 are inmates who have been identified through jail records as Willis Rigsbee and Cameron Thompson. These individuals have not been served with process.

and § 1367.

This action arises from events which allegedly occurred while Plaintiff was incarcerated at the Franklin County Correctional Institute, located on Jackson Pike in Columbus, Ohio. On April 5, 2002, Plaintiff was placed in the custody of the Franklin County Sheriff after being sentenced to serve twenty four days in jail. (*Complaint* at ¶ 12). Upon arrival at the Jackson Pike facility, Plaintiff was placed in a jail cell with twenty people. According to Plaintiff, as he was reading a book, two inmates became agitated because Plaintiff was not conversing with them. One inmate allegedly threatened Plaintiff and pushed him in the shoulder. (*Id.* at ¶ 15). Plaintiff also claims that one of the inmates struck him twice with an unidentified object. (*Id.* at ¶ 16). Plaintiff allegedly retreated to the recreation area but was again attacked by the same inmates, who kicked and punched him. (*Id.*). Plaintiff stood up after the attack and observed an officer walking past the cell. Plaintiff notified the officer of the alleged attack. Plaintiff was removed from the cell and was transported to the Ohio State University Medical Center Emergency Room for treatment. (*Id.*).

Plaintiff was examined and was diagnosed with bilateral fractures to his mandible, meaning his jaw was broken. (*Id.* at ¶ 18). He was discharged from the hospital and returned to jail in the early morning hours of April 6, 2005. (*Affidavit of Dr. Gayle Gordillo* at ¶ 8). According to Dr. Gordillo, attending surgeon in the Division of Plastic Surgery, immediate surgery was not necessary. (*Id.* at ¶ 7). Plaintiff was prescribed pain medication and an antibiotic and was told that the Division of Plastic Surgery would contact him regarding surgery to repair his jaw. (*Id.* at ¶ 8). Plaintiff was also advised to eat a soft or liquid diet. (*Id.* at ¶ 9). Upon his return to the jail, Plaintiff was placed in a cell designated for medical care. (*Barrett*

2

*Affidavit* at ¶ 36).

Plaintiff claims that he was not given the appropriate diet. (*Complaint* at ¶ 20)[2]. According to Major Michael Herrell, Facility Commander of the Jackson Pike facility, Plaintiff did receive his medicine and a liquid diet as prescribed. (*Herrell Affidavit* at ¶¶ 8, 9, 12).

Plaintiff further claims that Defendants failed to accommodate a request of Dr. Gordillo that Plaintiff return for surgery on April 9 or 10, 2002. (*Id.* at ¶ 23). Dr. Gordillo avers that on April 9, 2002, her office contacted the Franklin County Sheriff's Medical Department to request that Plaintiff be transported for surgery on April 11, 2002. (*Gordillo Affidavit* at ¶ 10). The department informed Dr. Gordillo that, due to personnel issues, the date of April 11 was not feasible for transporting the Plaintiff. (*Id.*). Dr. Gordillo then inquired about scheduling surgery on April 12, 2002. (*Id.*). Dr. Gordillo was informed that because April 12 was a Friday, the were no transports to be made by the jail that day. (*Id.*). Consequently, Dr. Gordillo scheduled surgery for April 16, 2002. (*Id.*).

Plaintiff was released from incarceration on April 13, 2002. (*Affidavit of Mark Barrett*[3] at ¶ 35). Plaintiff apparently had not been notified prior to his release that surgery was scheduled for April 16, 2002. On April 15, 2002, Franklin County employee Debbie Thompson contacted Plaintiff's mother to ensure she was aware of the April 16 surgery date. (*Id.* at ¶ 19). Plaintiff underwent surgery on April 16, 2002. (*Complaint* at ¶ 23). According to Plaintiff, the delay in surgical treatment resulted in an infection and the "right side of Plaintiff's jaw is still numb and

---

[2] As noted *infra*, page 11, Plaintiff admitted in his deposition testimony that he was given the prescribed liquid diet.

[3] Barrett is the Chief Deputy Sheriff in charge of the Franklin County Correctional Centers. (*Barrett Affidavit* at ¶ 2).

3

not working." (*Id.* at ¶ 24). According to Dr. Gordillo, Plaintiff did not have an infection on the date of surgery. (*Gordillo Affidavit* at ¶¶ 16-17). Plaintiff was discharged on April 16, 2002 after the surgery. He did, however, return to the emergency room on April 17 with symptoms of an infection. (*Id.* at ¶ 22). He was thereupon admitted to the hospital. Dr. Gordillo treated Plaintiff for the infection and he was released from Ohio State University Medical Center on April 20, 2002. (*Id.* at ¶ 24). Dr. Gordillo examined Plaintiff on a follow-up visit on April 30. Plaintiff was experiencing some weakness in his right lower lip. According to Dr. Gordillo, this was a side-effect of surgery not attributable to delay in treatment or any infection. (*Id.* at ¶ 28). Dr. Gordillo examined Plaintiff again on May 21, 2002. Prior to his visit, Plaintiff had cut the wires surrounding the incision himself. (*Id.* at ¶ 29). Plaintiff was instructed to perform range of motion exercises and the screws in his jaw were removed. (*Id.*). Plaintiff was scheduled for another visit on May 28, 2002, but he did not appear. (*Id.* at ¶ 32). Thereafter, Plaintiff discontinued treatment with Dr. Gordillo. (*Id.* at ¶ 33).

Plaintiff claims that the Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. Plaintiff also seeks to hold Franklin County, the Franklin County Sheriff's Department and Sheriff James Karnes liable under § 1983 on a theory of vicarious liability. Finally, Plaintiff asserts state law claims of negligence against the county Defendants and assault and battery against Defendants John Does #3 and #4.

4

## II.

### A. Motion to Dismiss

Defendants Franklin County, the Franklin County Sheriff's Office, and Defendants John Doe #1 and John Doe #2 seek dismissal of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).

### Standard

Rule 12(b)(6) permits a Defendant, by motion, to raise the defense of a Plaintiff's "failure to state a claim upon which relief can be granted." A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) "should not be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court is authorized to grant a motion to dismiss under 12(b)(6) only where it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Schuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Mayer v. Mylod*, 988 F.2d 635, 637 (6th Cir. 1993). While the Court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990), the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

5

**Analysis**

Defendants Franklin County, the Franklin County Sheriff's Office, and John Does #1 and #2 move for dismissal of Plaintiff's claims under § 1983.

With respect to the Franklin County Sheriff's Office, Defendant correctly points out that "[u]nder Ohio law, a county sheriff's office is not a legal entity that is capable of being sued" for purposes of § 1983. *Barrett v. Wallace*, 107 F.Supp.2d 949, 954 (S.D. Ohio 2000), citing *Batchik v. Summit County Sheriff's Dep't*, No. 13783, 1989 WL 26084 (Ohio Ct. App. March 15, 1989). Accordingly, the Franklin County Sheriff's Office is entitled to dismissal of Plaintiff's claims under Rule 12(b)(6).

Defense counsel seeks dismissal of Defendants John Does #1 and #2 on the basis that they have never been properly identified or served pursuant to Fed. R. Civ. P. 4(m). This rule provides, in relevant part:

> **(m) Time Limit for Service.** If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. . . .

Fed. R. Civ. P. 4(m). More than 120 days has passed since the filing of the instant action, April 1, 2004.

In response to the motion to dismiss, Plaintiff asserts that he "attempted to identify the two listed John Doe Defendants through discovery" with no success. (*Memorandum contra* at 5). Plaintiff contends that, despite the failure to identify, the Defendants should not be dismissed because they are on actual or constructive notice of the lawsuit.

6

The Court finds Plaintiff's arguments without merit. Plaintiff has had ample time to identify John Does #1 and #2. The Court finds no cause sufficient to justify setting aside the requirement of dismissal under Rule 4(m). Accordingly, John Doe #1 and John Doe #2 shall be dismissed from this case.

With respect to Defendant Franklin County, Plaintiff asserts governmental liability under § 1983 on a theory of failure to train and/or supervise. While a governmental entity is considered a "person" for purposes of liability under § 1983, county or municipal liability is limited to situations in which the deprivation of constitutional rights results from the official policy or custom of the public body. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978). The county cannot be held liable simply on a theory of *respondeat superior*. *Id.* at 691.

Plaintiff identifies no official custom or policy of Franklin County with regard to his constitutional claim. In addition, Plaintiff fails to come forward with any facts to demonstrate how, even if there were a custom or policy of the county, his injuries are causally linked to the County's alleged failure to train and/or supervise. Consequently, Plaintiff's municipal liability claim fails as a matter of law. Franklin County is entitled to dismissal of Plaintiff's claim under Rule 12(b)(6).

The Court notes that, to the extent Plaintiff sues Defendant Karnes in his official capacity the claim is, in effect, a claim against Franklin County. Since the Court finds that liability against the county fails as a matter of law, it follows that Defendant Karnes is not liable in his official capacity.

**B. Motion for Summary Judgment**

Defendant Sheriff James Karnes moves for summary judgment on Plaintiff's Eighth Amendment claims.

**Standard**

The procedure for considering whether summary judgment is appropriate, is found in Fed. R. Civ. P. 56(c); this section provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158-59 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also, Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identifies a number of important principles in new era

summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

## Analysis

Plaintiff claims that Defendant Karnes was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. "The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' " on an inmate by acting with "deliberate indifference" to the prisoner's serious medical needs. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir.2004), quoting *Estelle v. Gamble*, 429 U.S. 97, 104(1976). The deliberate indifference standard involves more than a complaint of mere negligence or even malpractice with regard to medical care. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). In addition, a

9

prisoner's difference of opinion as to the course of treatment does not constitute deliberate indifference. *Id.* at 107.

A claim of deliberate indifference as to medical care has both an objective and a subjective component. Under the objective component, the Plaintiff must show that the medical condition is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). With regard to a claim of alleged delay in medical treatment, the Plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of the delay." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001). Under the subjective component, the Plaintiff must show that the government actor had a "sufficiently culpable state of mind." *Id.* This means that the Defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The Sixth Circuit has characterized this mental state as similar to that of "subjective recklessness" in the area of criminal law. *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004).

Applying the foregoing standard to this case, the Court first finds no genuine issues of material fact as to the objective component of Plaintiff's claim that a delay in medical care constitutes deliberate indifference[4]. There is no evidence of record to show that the delay in Plaintiff's surgery had any detrimental effect on Plaintiff. In fact, the Plaintiff's surgeon avers that it was not necessary to operate on Plaintiff on the day of the injury. (*Gordillo Affidavit* at ¶ 7). Further, the evidence shows that the infection Plaintiff later suffered and the difficulty he experienced moving his mouth after surgery were side-effects of the surgery itself, not

---

[4]The Court notes that Plaintiff does not claim any delay in initial treatment after he was assaulted by the two inmates at Jackson Pike. Indeed, the evidence of record reveals that after Plaintiff notified an officer of the attack, he was immediately transported to the emergency room for treatment.

10

attributable to Plaintiff receiving surgery approximately ten days after the incident at the jail. (*Id.* at ¶ 28). In view of these undisputed facts, the Court can find no genuine issue as to a detrimental effect resulting from Plaintiff's operation being delayed.

As to the subjective component, Plaintiff fails to adduce any evidence to demonstrate that Defendant Karnes could draw an inference that a substantial risk of serious harm to Plaintiff existed or that Defendant Karnes actually drew such inference. The undisputed evidence of record shows that Plaintiff was designated to a medical cell when he was returned to the Jackson Pike facility from the Ohio State University Medical Center on April 6, 2002. In addition, Plaintiff received his medicine and a liquid diet as prescribed[5]. (*Herrell Affidavit* at ¶¶ 8, 9, 12).

In sum, the Court finds no genuine issues of material fact on Plaintiff's claim of deliberate indifference to his serious medical needs. Defendant Karnes is entitled to summary judgment on this claim.

To the extent Plaintiff asserts a failure to protect claim under the Eighth Amendment, the Court finds no genuine issues of material fact as to such a claim. In order to establish this claim, Plaintiff must show that prison conditions pose a substantial risk of serious harm and that prison officials are deliberately indifferent to inmate safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). There must be evidence to show that prison officials know of and have disregarded an excessive risk to inmate safety; negligence on the part of prison officials is not sufficient to amount to deliberate indifference. *Id.* at 835, 837.

In this case, the record is devoid of any such evidence. Although Plaintiff was apparently

---

[5]On deposition, Plaintiff testified that was given his medicine and conceded that he received a liquid diet. (*Plaintiff's Depo.* at 92, 98, 107).

11

attacked by two inmates, there is no evidence to show that the Defendant was aware of such a risk or that it was disregarded. In fact, both inmates who attacked Plaintiff were charged with violations of jail rules and were disciplined. (*Barrett Affidavit* at ¶ 39). Accordingly, the Court finds that any Eighth Amendment claim premised on a theory of failure to protect is without merit.

More fundamentally, to the extent Plaintiff sues Defendant Karnes in his individual capacity under § 1983, the Court finds Plaintiff's claims without merit for an additional reason. There is no evidence in the record to demonstrate that Defendant Karnes "encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Further, there is no evidence to indicate Defendant Karnes was present during the incident which gave rise to this case.

## C. Remaining Claims

Plaintiff's Complaint presents two state law claims for negligence and assault and battery. In view of the disposition of the federal claims, upon which jurisdiction in this Court is based, the Court declines to consider the merits of the state law claims. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966); 28 U.S.C. § 1367(c).

## III.

In light of the foregoing, the Motion to Dismiss on behalf of Defendants Franklin County, the Franklin County Sheriff's Office, and Defendants John Doe #1 and John Doe #2, as well as the Motion for Summary Judgment on behalf of Franklin County Sheriff James Karnes (**Doc. #24**) is **GRANTED**. The Clerk is **DIRECTED** to enter Judgment in favor of Defendants and to dismiss this case.

**IT IS SO ORDERED.**

3-6-2006
**DATE**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE